UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LEONARD THOMAS,

    Plaintiff,

    v.                                      CAUSE NO. 3:21-CV-448-CCB-JEM

WEXFORD OF INDIANA, et al.,

    Defendants.

## OPINION AND ORDER

Leonard Thomas, a prisoner without a lawyer, is proceeding in this case on eight claims against numerous defendants. First, he is proceeding against fourteen members of Miami Correctional Facility's (MCF's) medical staff for "failing to provide him with constitutionally adequate treatment for his severe mental illness in violation of the Eighth Amendment while at the Miami Correctional Facility from March 9, 2021, through the present[.]" ECF 122 at 28. Second, he is proceeding "against the current Warden of the Miami Correctional Facility in his official capacity for injunctive relief to ensure he receives constitutionally adequate treatment for his severe mental illness while at the Miami Correctional Facility[.]" *Id.* at 29. Third, he is proceeding against ten correctional officers, supervisory officials, and other non-medical staff members at MCF "for being deliberately indifferent to his severe mental illness in violation of the Eighth Amendment while at the Miami Correctional Facility from March 9, 2021, through the present[.]" *Id.* Fourth, he is proceeding against six Indiana Department of Correction (IDOC) supervisory officials "for transferring him to the Miami Correctional Facility on

March 9, 2021, and being deliberately indifferent to his severe mental illness in violation of the Eighth Amendment while there from March 9, 2021, through the present[.]" *Id.* at 29. Fifth, he is proceeding against a Unit Team Manager and four correctional officers at MCF "for failing to protect him from being attacked by Offender Walker on April 5, 2021, in violation of the Eighth Amendment[.]" ECF 122 at 29. Sixth, he is proceeding against sixteen individuals "for placing and/or leaving him in indefinite segregation/restricted housing and for being deliberately indifferent to those conditions of confinement while housed at the Miami Correctional Facility in violation of the Due Process Clause of the Fourteenth Amendment and/or the Eighth Amendment from March 9, 2021, through the present[.]" *Id.* at 30. Seventh, he is proceeding "against Wexford of Indiana on a *Monell* claim for having unconstitutional policies, practices, and/or customs related to the classification, placement, and treatment of seriously mentally ill inmates at the Miami Correctional Facility from April 1, 2017, to June 30, 2021[.]" *Id.* And finally, he is proceeding "against Centurion Health Service on a *Monell* claim for having unconstitutional policies, practices, and/or customs related to the classification, placement, and treatment of seriously mentally ill inmates at the Miami Correctional Facility from July 1, 2021, to the present[.]" *Id.*

All defendants filed a joint motion for summary judgment, arguing Thomas did not exhaust his available administrative remedies before filing this lawsuit. ECF 193. Thomas has filed a response, and the defendants have filed a reply. ECF 207, 212-214. The defendants' summary judgment motion is now fully briefed and ripe for ruling.

2

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Nevertheless, "[f]ailure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative

rules require." *Id*. But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered available. *Id*. Accordingly, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016).

The parties agree an Offender Grievance Process was in place at all relevant times, which required Thomas to complete three steps before filing this lawsuit: (1) a formal grievance; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. ECF 193-2 at 3. The undisputed facts show Thomas submitted three grievances relevant to his claims in this lawsuit. Each grievance will be addressed in turn.

### Grievance 140168

First, Thomas submitted Grievance 140168 on April 12, 2022, complaining he had been hearing voices telling him to harm himself and had received no help from MCF's mental health staff. ECF 193-4 at 1. On April 18, 2022, the Grievance Specialist denied Grievance 140168 on its merits. *Id.* at 5. The Grievance Specialist attests Thomas "never appealed this grievance." ECF 193-1 at 6. In his response, Thomas provides evidence he submitted a Level I appeal after Grievance 140168 was denied. ECF 207 at 14; ECF 207-7

at 30, 32. The Level I appeal was received and denied by the warden, and Thomas checked the box indicating he wanted to submit a Level II appeal to the Department Grievance Manager. ECF 207-7 at 32. Thomas then sent a written notification to the Grievance Specialist requesting an appeal form so he could submit a Level II appeal, but he never received the form. *Id.* at 34; ECF 207 at 15.

Here, Thomas has provided evidence he exhausted all of the remedies that were available to him with regard to Grievance 140168. Specifically, Thomas submitted the grievance, submitted a Level I appeal, requested a Level II appeal form, and wrote to the Grievance Specialist to again request a Level II appeal form, but did not receive the form. In their reply, the defendants do not dispute any of Thomas' evidence. Instead, they argue Thomas did not exhaust Grievance 140168 because he did not complete a Level II appeal. ECF 212 at 3-4. But this ignores Thomas' evidence that he was unable to submit a Level II appeal because he was not able to obtain the proper form. *See Kaba*, 458 F.3d at 684; *Hill*, 817 F.3d at 1041 (a remedy is not available where "the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance"). Thus, the undisputed facts show Thomas exhausted all remedies that were available to him with regard to Grievance 140168.

Now the question remains – which of Thomas' claims are exhausted by Grievance 140168? The purpose of a grievance is to alert prison officials to a problem so that action can be taken to remedy the problem. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). An inmate's grievance is therefore sufficient to exhaust a claim if it raises the

same claim as the lawsuit and provides enough information to indicate that the defendant is the target. *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023); *see also Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024) ( "[I]n line with the purpose of the PLRA—to give a prison an opportunity to correct a problem before litigation, prisoners must provide some identifying information about the accused individuals") (citations omitted). An inmate cannot rely on a grievance to exhaust a claim if there is a "disconnect between the grievance and complaint." *Bowers v. Dart*, 1 F.4th 513, 517 (7th Cir. 2021).

Thomas was not required to specifically name each defendant in his grievance to exhaust his claim against that defendant. *See Jackson*, 105 F.4th at 959-60 (holding that "the district court erred by effectively requiring [the plaintiff] to specifically name every potential defendant in his grievances," as "our notice-based exhaustion standard has no such requirement."). Nevertheless, "prisoners must provide 'some identifying information about the accused individuals.'" *Id.* at 960. "In other words, a grievance must contain enough information about who caused the grieved of problem so that a prison can properly 'investigate and resolve grievances.'" *Id.* "Indeed, we have found exhaustion as to defendants not named in a grievance when, from the content of the grievance and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved." *Id.* In *Jackson*, the Seventh Circuit concluded the plaintiff's grievances complaining "Lt. Esser" refused to turn on the water in his cell only exhausted his claim against Lt. Esser and did not exhaust his claim against the other defendants, as the grievance complained only about Lt. Esser's

conduct and did not put the prison on notice that any defendant other than Lt. Esser was involved in the problem. *See id.* ("his grievances presented one clearly identified issue, which is that Lt. Esser refused to turn Jackson's water on after learning that Jackson did not have it.") (citation, quotation marks, and alterations omitted).

Here, Thomas complained in Grievance 140168 that: "On April 2, 2022, I heard voices again telling me to cut my left wrist with a loose razor blade and die I received no help from Nurse Felisha or the Miami Correctional Facility's mental health treatment team staff." ECF 193-4 at 1. Grievance 140168 is sufficient to exhaust Thomas' inadequate-medical-care claim against Nurse Felisha and any members of MCF's medical staff, as it put the prison on notice of Thomas' allegation that medical staff was denying him adequate mental health treatment. Alternatively, Grievance 140168 does not exhaust Thomas' inadequate-medical-care claims against any correctional officers, supervisory officials, or other non-medical staff members at MCF, as the grievance did not put the prison on notice that any person at MCF other than medical staff was denying Thomas adequate mental health treatment. Nor does Grievance 140168 exhaust Thomas' failure-to-protect or conditions-of-confinement claims against any defendants, as the grievance contains no allegations relevant to these claims. And lastly, Grievance 140168 does not exhaust Thomas' *Monell* claims against Wexford of Indiana and Centurion Health Service, as the grievance did not put the prison on notice of Thomas' allegations that these parties were enforcing unconstitutional policies, practices, or customs related to his classification or treatment. Accordingly, Grievance 140168 exhausts Thomas' inadequate-medical-care claims against all members of MCF's

7

medical staff and his injunctive-relief claim against the current warden of MCF,[1] but does not exhaust any of his other claims in this lawsuit.

*Grievance 144888*

Thomas submitted Grievance 144888 on September 9, 2022, complaining he told "Sgt. Mays" he needed to speak to mental health and she responded that she did not care. ECF 193-4 at 6. Thomas asserted that he later received psychotropic medications from a nurse and was placed on suicide watch. *Id.* On October 18, 2022, the Grievance Specialist denied Grievance 144888 on its merits. *Id.* at 9. The Grievance Specialist attests Thomas "never appealed this grievance." ECF 193-1 at 6. In his response, Thomas argues he did fully appeal Grievance 144888. ECF 207 at 15. But whether Thomas exhausted his available administrative remedies with regard to Grievance 144888 is not relevant, as Grievance 144888 does not relate to any of Thomas' claims in this lawsuit. Specifically, Thomas only alleged in Grievance 144888 that "Sgt. Mays" ignored his request to speak to mental health, and that he later received medication from a nurse and was placed on suicide watch. Thus, the grievance only complains of misconduct by Sgt. Mays, who is not currently a party in this lawsuit. Because Grievance 144888 only put the prison on notice that Sgt. Mays had denied Thomas access to mental health staff, and did not put the prison on notice that any other person was involved in this conduct

---

[1] The current warden of MCF was added to this case by the court in order to provide injunctive relief in the event Thomas prevails on his inadequate-medical-care claim against MCF's medical staff. Accordingly, because Thomas exhausted his inadequate-medical-care claim against MCF's medical staff, the current warden of MCF will remain as a party in this lawsuit.

or had engaged in any other misconduct, Grievance 144888 does not exhaust any of Thomas' claims in this lawsuit.

### December 27, 2022 grievance

Thomas submitted a new grievance on December 27, 2022, complaining he felt suicidal and had hallucinations, that staff knew about it but did nothing, and that he wanted to transfer to a facility with specialized mental health treatment. ECF 193-4 at 11. On January 18, 2023, the Grievance Specialist returned this grievance to Thomas, explaining that "Transfers are a Classification Issue which is non-grievable." *Id.* at 10; *see* ECF 193-2 at 4 (listing "Classification actions or decisions, which include . . . facility transfers" as a non-grievable issue, as "a separate classification appeals process is in place for this purpose").[2] The "Return of Grievance" form instructed Thomas he could revise and resubmit his grievance within five business days. ECF 193-4 at 10; *see* ECF 193-2 at 10 (if a grievance is rejected and returned to an inmate, "It shall be the responsibility of the offender to make the necessary revisions to the grievance form and to return the revised form to the Offender Grievance Specialist within five (5) business days from the date that it is returned to the offender"). The Grievance Specialist attests Thomas never corrected and resubmitted his December 27 grievance, which was a necessary step to fully exhaust the grievance. ECF 193-1 at 7. In his response, Thomas does not dispute any of these facts. ECF 207 at 15-16.

---

[2] The record contains no evidence Thomas exhausted a classification appeal.

9

Here, the undisputed facts show Thomas did not fully exhaust his December 27 grievance, as it is undisputed the grievance office properly returned this grievance to him for improperly requesting a facility transfer and he never revised and resubmitted the grievance to the grievance office. Thomas does not dispute any of these facts, and does not argue or provide any evidence his administrative remedies were unavailable with regard to his December 27 grievance. Therefore, the undisputed facts show Thomas did not fully exhaust his December 27 grievance.

*Conclusion*

Accordingly, the undisputed facts show Thomas fully exhausted his available administrative remedies with regard to Grievance 140168, but he did not exhaust any other grievance relevant to his claims in this lawsuit. As discussed, Grievance 140168 exhausts Thomas' inadequate-medical-care claim against all members of MCF's medical staff and his injunctive-relief claim against MCF's current warden, but does not exhaust any of Thomas' other claims.

As one final matter, the record indicates Thomas has been released from prison and no longer is incarcerated (ECF 215), which suggests his injunctive-relief claim against the warden is now moot. Therefore, though Thomas' injunctive-relief claim against the warden survives the exhaustion defense, it may still be subject to dismissal. *See Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988) (holding that, if a prisoner is released or transferred to another prison after he files a complaint, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred). The court therefore grants Thomas until July 10,

2026, to file a response explaining why his injunctive relief claim against the warden should not be dismissed as moot, and notifies him this claim will be dismissed if he does not file a response by the deadline.

For these reasons, the court:

(1) **DENIES** the defendants' motion for summary judgment (ECF 193) with regard to Thomas' claims:

    a. against Dr. Muranda, Dr. A. Cisse, Dr. Verdon, Dr. Pupko, Mental Health Professional K.S. Miller-Sweet, Mental Health Professional Alexander, Mental Health Professional Beck, Mental Health Professional Sipe, Intake Nurse Hill, Nurse Swearingen, Nurse C. Crites, Nurse F. Parks, Nurse D. Templin, and Medical Administrator Lee Ivers in their individual capacities for monetary damages for failing to provide him with constitutionally adequate treatment for his severe mental illness in violation of the Eighth Amendment while at the Miami Correctional Facility from March 9, 2021, through the present; and

    b. against the Warden of the Miami Correctional Facility in his official capacity for injunctive relief to ensure Thomas receives constitutionally adequate treatment for his severe mental illness while at the Miami Correctional Facility;

(2) **GRANTS** the defendants' motion for summary judgment (ECF 193) with regard to Thomas' other six claims;

11

(3) **DISMISSES** former Miami Correctional Facility Warden William Hyatte, Assistant Miami Correctional Facility Warden George Payne, Assistant Miami Correctional Facility Warden J. Scaife, Unit Team Manager Nathanael Angle, Unit Team Manager Grove, Case Manager Tim Hamrick, Case Manager Rentzscher, Case Manager J. Isaac, Case Manager Croft, Sgt. Martin, IDOC Regional Director Becky Hess, IDOC Commissioner Robert E. Carter, Jr., IDOC Deputy Commissioner James Basinger, IDOC Director of Classification Jack Hendrix, IDOC Director of Special Needs Population Amy Eichmeier, IDOC Director Cara Misetic, Sgt. Beane, Officer K. Kirby, Officer J. Anderson, Officer M. Kennedy, Classification Director T. Worden, Classification Supervisor A. Tobin, Wexford of Indiana, and Centurion Health Service from this lawsuit;

(4) **REMINDS** the parties this case is now proceeding only on Thomas' two remaining claims as outlined in order line 1;

(5) **INSTRUCTS** Thomas to file a response by July 10, 2026, explaining why his injunctive-relief claim against the warden should not be dismissed as moot; and

(6) **NOFIFES** Thomas his injunctive-relief claim against the warden will be dismissed as moot if he does not file a response by the deadline.

SO ORDERED on June 30, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT